[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-11889

————————————————

D.C. Docket No. 1:18-cr-20885-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JHONY ANTONIO CONTRERAS
MARADIAGA,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(February 12, 2021)

Before WILSON, LAGOA, and HULL, Circuit Judges.

LAGOA, Circuit Judge:

Jhony Antonio Contreras Maradiaga appeals his conviction for use of a fraudulent immigration document, in violation of 18 U.S.C. § 1546(a). On appeal, Maradiaga argues that: (1) his conviction must be vacated because he was charged with and convicted of conduct that does not constitute a crime within the meaning of § 1546(a); (2) the district court's jury instruction on the elements of a § 1546(a) offense constructively amended the indictment; and (3) comments by the government during closing arguments misled the jury and improperly bolstered a government witness, thereby depriving Maradiaga of a fair trial. After careful review, we find no error and affirm Maradiaga's conviction.

## I.    FACTUAL AND PROCEDURAL HISTORY

To obtain a Florida driver's license, the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") requires an applicant to prove his identity and lawful presence in the United States. One of the documents Florida accepts as proof of lawful presence is an order of supervision from the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"). ICE issues an order of supervision to an alien who has a final order of removal from the United States, but, for a variety of reasons, cannot immediately be removed. ICE, in its discretion, then releases the alien into the community pending removal, subject to certain conditions detailed in the order of supervision.

2

On August 30, 2018, Maradiaga went to the DHSMV at the Mall of the Americas in Miami, Florida, to obtain a Florida driver's license. Maradiaga presented an ICE order of supervision to the license examiner. The examiner rejected Maradiaga's driver's license application for an unknown reason. The following day, Maradiaga went to a different DHSMV location and presented the same order of supervision. The license examiner at this location, in Hialeah Gardens, Florida, scanned the order of supervision into the DHSMV system, and issued Maradiaga a Florida driver's license.

On November 9, 2018, a grand jury indicted Maradiaga for a violation of 18 U.S.C. § 1546(a). The one-count indictment charged Maradiaga with knowingly possessing and using "a document prescribed by statute and regulation as evidence of authorized stay in the United States," specifically an ICE order of supervision, which Maradiaga knew was "forged, counterfeited, altered, and falsely made."

At trial, Officer Jose Arroyo, a deportation officer with ICE, testified that he reviewed the Order of Supervision Maradiaga presented to DHSMV and found that the alien number on the Order of Supervision did not match Maradiaga's alien number. Officer Arroyo explained that an order of supervision can be issued to an alien only after the alien has a final order of removal from an immigration judge. The Order of Supervision Maradiaga presented states that he was ordered removed in 1999 and contains specific conditions for Maradiaga to follow, including

3

registering as a sex offender, receiving sexual deviancy counseling, receiving substance abuse treatment, and reporting to a probation officer. Officer Arroyo testified that there is no record of Maradiaga being subject to or completing any of these conditions. Officer Arroyo further testified that Maradiaga was never ordered removed or issued an order of supervision.

Officer Natalie Diaz, an officer with DHS's Fraud Detection and National Security Directorate, testified that she reviewed Maradiaga's entire alien file. Maradiaga submitted various applications to the United States Citizenship and Immigrations Services ("USCIS") from 2003 to 2010 for temporary protected status ("TPS") and employment authorization. Officer Diaz testified that the majority of these applications indicated that they had been filled out by Maradiaga because the "preparer" section was left blank. These applications, all in English, contained Maradiaga's true alien number, which Officer Diaz noted would also have been on all correspondence sent to Maradiaga regarding his immigration status. The TPS applications also stated that Maradiaga had never been involved in immigration proceedings or ordered removed. Most of the supporting documents attached to the TPS applications were in English. Officer Diaz stated that Maradiaga had never been ordered removed, that a person would know if they had been ordered removed, and that he was never issued an order of supervision. In her professional opinion, the Order of Supervision that Maradiaga used to obtain a driver's license is

4

fraudulent and contains Maradiaga's signature. Officer Diaz explained to the jury that law enforcement had been investigating several individuals allegedly involved with selling immigration documents in Miami, including fraudulent orders of supervision. One of the individuals being investigated was Valois Nunez Artiles. Mr. Nunez is not an attorney.

Maradiaga testified that he has lived in the United States for about sixteen years but does not speak or understand English. He admitted that he answered a question on direct examination before the translation even began, but said that, while he was starting to practice English at work, he still does not understand English very well. Maradiaga stated that he obtained the Order of Supervision from an "attorney" named "Val." According to Maradiaga, this "attorney" told him that "he was going to process the paperwork for [him] that would allow [him] to legally get [a] license." Maradiaga admitted that he signed the Order of Supervision, but only did so because his "attorney" told him to do so. Maradiaga testified that, on August 30, 2018, he went alone to the DHSMV location at the Mall of Americas to obtain a driver's license, but his application was rejected. Maradiaga then called the "attorney" to let him know, and the "attorney" told Maradiaga that he would go with him to a different DHSMV. The next day, Maradiaga and the "attorney" went to a DHSMV location in Hialeah Gardens. Maradiaga testified that the female license examiner seemed to know his "attorney" and was very friendly. The "attorney" gave

Maradiaga a "thumbs up" and the license examiner issued Maradiaga a driver's license.

Prior to hiring "Val," Maradiaga hired another "attorney," Karen Duarte, who turned out to be a notary public. Maradiaga testified that he never filled out any of his immigration forms—they were all filled out by Duarte. On cross examination, Maradiaga was able to provide Duarte's full name, business name, business address, and invoices from the use of her legal services, but could not provide any information about "Val." Finally, Maradiaga's landlord, Aymee Villar, testified that she has known Maradiaga for twelve years and only converses with him in Spanish, though she admitted that she does not know if he can speak or understand English.

After a two-day jury trial, the jury found Maradiaga guilty. Following the verdict, Maradiaga filed a motion for a new trial asserting that the government made improper statements during its closing argument and that the verdict was against the weight of the evidence because an order of supervision is not a document prescribed by statute or regulation as evidence of authorized stay in the United States. The district court denied the motion and sentenced Maradiaga to six months' imprisonment, followed by one year of supervised release. Maradiaga filed a timely notice of appeal.

## II.    STANDARD OF REVIEW

We review a district court's interpretation of a criminal statute *de novo*. *United States v. Williams*, 790 F.3d 1240, 1244 (11th Cir. 2015). The sufficiency of the evidence to support a conviction is also reviewed *de novo* and the evidence is viewed "in the light most favorable to the government," while "drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007). An unpreserved claim that jury instructions constructively amended an indictment is reviewed "only for plain error." *United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015). "When a defendant fails to object to the prosecutor's closing argument, relief is available to rectify only plain error." *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).

## III.    ANALYSIS

Maradiaga raises three issues on appeal. First, Maradiaga argues that his conviction must be vacated because he was charged with and convicted of conduct that does not constitute a crime within the meaning of 18 U.S.C. § 1546(a). Second, he contends that the district court's jury instruction on the elements of a § 1546(a) offense constructively amended the indictment. Third, he asserts that the government misled the jury and improperly bolstered a witness during closing argument, thereby depriving Maradiaga of a fair trial. We discuss each issue in turn.

## A. Orders of Supervision Fall Within the Scope of § 1546(a)

Maradiaga argues that his conviction must be vacated because he was charged with and convicted of conduct that does not constitute a crime within the meaning of 18 U.S.C. § 1546(a). Section 1546(a), in relevant part, criminalizes the possession and use of certain fraudulent immigration documents:

> Whoever knowingly . . . utters, uses, attempts to use, possesses, obtains, accepts, or receives any [fraudulent] visa, permit, border crossing card, alien registration receipt card, *or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States*, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained [is guilty of an offense against the United States].

18 U.S.C. § 1546(a) (emphasis added). The indictment charged, and the jury ultimately found, that Maradiaga knowingly possessed and used a fraudulent ICE order of supervision. Maradiaga contends that an order of supervision does not fall within § 1546(a)'s "other document" clause because an order of supervision is not a document prescribed by statute or regulation as evidence of authorized stay in the United States. This argument, however, is foreclosed by this Court's decision in *United States v. Chinchilla*, No. 19-10987 (11th Cir. Feb. 11, 2021), in which we concluded that an order of supervision falls within § 1546(a)'s "other document" clause. Maradiaga's conduct, as charged in the indictment, therefore constitutes a criminal offense under § 1546(a).

## B.  The District Court's Jury Instructions

Maradiaga next argues that the district court constructively amended the indictment when it instructed the jury on one of the elements of a crime under § 1546(a).  While the indictment charged only the use and possession of "a document prescribed by statute and regulation as evidence of authorized stay," the jury instructions stated that, to find Maradiaga guilty, the jury must find that he "knowingly possessed or used a Department of Homeland Security Order of Supervision required as evidence of an authorized stay *or employment* in the United States, as charged." (emphasis added).  Maradiaga contends that the inclusion of the words "or employment" in the jury instructions necessitates vacating his conviction because it "expanded the Indictment . . . thereby broadening the possible bases for conviction beyond the Indictment" and "allowed the jury to convict [Maradiaga] if it found that the Order of Supervision was evidence of authorized employment in addition to evidence of authorized stay."  The government responds that Maradiaga's challenge to the jury instructions is barred by the invited-error doctrine and, even assuming that it is not, Maradiaga cannot show plain error.  We agree with the government that the claim fails under the invited-error doctrine.

"[T]he doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (quoting *United States v. Stone*, 139 F.3d 822, 838 (11th Cir.

9

1998)).  "Where a party invites error, the Court is precluded from reviewing that error on appeal."  *United States v. Harris*, 443 F.3d 822, 823–24 (11th Cir. 2006). Here, Maradiaga not only failed to object to the jury instructions at trial,[1] he actually proposed the very instruction that he now challenges on appeal.  This is a textbook case of invited error.  By proposing the exact language that the district court adopted, Maradiaga invited any purported error.  We therefore decline to review his challenge to the jury instructions.  *See United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010) (holding that "when a party agrees with a court's proposed instructions, the doctrine of invited error applies" and "review is waived even if plain error would result").[2]

Additionally, even if we were to review Maradiaga's challenge to the jury instructions, we would do so only for plain error since Maradiaga failed to raise the issue below.  See *Holt*, 777 F.3d at 1261 ("[W]e review an unpreserved constructive-amendment claim only for plain error").  The plain-error standard requires a defendant to show "an error that is plain; that affects substantial rights; and 'that

---

[1] Nor, for that matter, did Maradiaga challenge the instructions in his post-verdict motion for a new trial.

[2] Maradiaga further asserts that a constructive amendment to an indictment always requires reversal because the error is constitutional in nature.  For support, Maradiaga relies on *United States v. Peel*, 837 F.2d 975 (11th Cir. 1988).  As we noted in *United States v. Madden*, 733 F.3d 1314 (11th Cir. 2013), however, the rule in *Peel* was abrogated by *United States v. Olano*, 507 U.S 725, 731 (1993), and, post-*Olano*, assuming a defendant has not waived review, "where [a] defendant fails to object to a constructive amendment, we apply traditional plain-error review." *Madden*, 733 F.3d at 1319–22.

seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Madden*, 733 F.3d at 1322). The government argues that Maradiaga cannot establish that the purported error affected his substantial rights. An error affects a defendant's substantial rights "when the error is 'prejudicial'[;] [t]hat is, the error 'affected the outcome of the district court proceedings.'" *Madden*, 733 F.3d at 1323 (quoting *Olano*, 507 U.S. at 734).

Maradiaga does not attempt to make a showing that the inclusion of the words "or employment" in the jury instructions affected the outcome of the trial—nor would such an attempt have any merit. The only theory the jury heard at trial was the "evidence of authorized stay" theory, and the evidence was focused accordingly. For example, the government argued in its opening statement that an order of supervision gives individuals who have been ordered removed "the opportunity to stay in this country with that order of supervision until the U.S. government removes them." Both Officer Arroyo and Officer Diaz testified that an order of supervision allows an alien who has been ordered removed to remain in the United States under supervision of ICE until removal can be effectuated. And in closing, the government argued that there had been testimony from multiple witnesses that an order of supervision was "required to stay in the United States. It authorizes you to be here,

11

sets the rule, sets the groundwork for you to remain in the United States after removal." [3]

Given the record as a whole, we conclude that the jury was not misled or confused by the "or employment" language in the district court's instruction and that the jury convicted Maradiaga of possessing and using an order of supervision "as evidence of authorized stay" as charged in the indictment. Thus, even if Maradiaga's claim was not barred as invited error, he is unable to show prejudice. *Cf. United States v. Margarita Garcia*, 906 F.3d 1255, 1278 (11th Cir. 2018) (finding no prejudice where the district court added the word "attempt" to the jury instructions, despite its absence from the indictment, because "the government never argued an attempt theory to the jury[] and the entire evidential foundation of the government's case was devoid of any reference to an attempt").

## C. The Government's Closing Argument

Maradiaga argues that the government committed prosecutorial misconduct by making multiple improper statements in its closing argument. Specifically, Maradiaga asserts that the government (1) misled the jury into believing that he fabricated the existence of "Val," and (2) improperly bolstered the testimony of Officer Diaz. The government responds that (1) in context, the statements were not

---

[3] Indeed, the defense did not contest this aspect of the government's case, focusing instead on whether Maradiaga had the requisite *mens rea* when he possessed and used the order of supervision to obtain the driver's license.

improper, and (2) even if improper, Maradiaga cannot show prejudice because the evidence of guilt was overwhelming.  While we agree with Maradiaga that some of the government's statements regarding "Val" were misleading, the government is correct that Maradiaga cannot show prejudice.  We also find that the government did not improperly bolster Officer Diaz's testimony.

Maradiaga did not object to the alleged improper statements during the government's closing argument.  "When a defendant fails to object to the prosecutor's closing argument, relief is available to rectify only plain error." *Bailey*, 123 F.3d at 1400.  "Plain occurs where (1) there is error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." *United States v. Hall*, 314 F.3d 565, 566 (11th Cir. 2002). Substantial rights are prejudiced "when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different."  *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014) (quoting *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006)).  Here, neither the government's statements regarding "Val" nor its statements regarding Officer Diaz amount to prosecutorial misconduct.

1. <u>The Government's Statements Regarding "Val"</u>

To support his defense that he did not know the Order of Supervision was fraudulent, Maradiaga testified that he received the document from an "attorney" named "Val" who told him that "he was going to process the paperwork for [him] that would allow [him] to legally get [a] license." The government notes that, on cross, Maradiaga could not provide any of the information normally associated with a lawyer, including the attorney's last name, phone number, law firm name, or law firm address. In contrast, when asked about a "lawyer"[4] that Maradiaga had hired years earlier, Duarte, he was able to provide her full name, law firm name, law firm address, and several invoices for her services. Consequently, even defense counsel referred to "Val" as an "alleged lawyer." The government's point in closing was that Maradiaga's claim—that he did not know the Order of Supervision was fraudulent because an attorney prepared and provided the document to him—was not credible. That argument is proper for the government to make, but the government took it a step further.

In its closing, the government suggested not only that "Val" was not a lawyer, but also that "Val" may not even exist. For example, the government argued to the jury that:

---

[4] Maradiaga testified that he first thought Duarte was a lawyer, but she turned out to be a notary public and "immigration professional," who worked at an immigration-services business.

14

[Maradiaga] knows that *no one was there helping him.* That is a story that was made up. . . . Do we have anything from *the mystery lawyer Val* with no last name? We don't even have his last name, don't have a phone number, can't describe the office or the business card. This is not a real lawyer. This is an excuse. *No evidence that that person even exists in this case.*

The government also stated:

Karen Duarte, he knew her address just off the top of his head. Could he tell you the address from the mystery lawyer? No. The firm name, JK, *he could tell us Karen Duarte's firm name because she's real. She exists.* Could he tell you anything about the mystery lawyer? No. Actual hard, tangible physical evidence, what do we see from Karen Duarte, granted, mostly from a long time ago, but there's at least something, *something showing that she exists.* We have nothing from this mystery lawyer. And it doesn't stop there. Phone number, he couldn't tell me the mystery lawyer's phone number. Bar number, every lawyer has a bar number, he couldn't tell you that. What does the business card look like? Nothing. Hourly rate, nothing. What's this guy's website, could we look him up? No, nothing there. Does he work with other lawyers? Again, not a single thing you would expect from a lawyer if you were to associate with that lawyer. If you were to truly have a lawyer out there who you paid money to help you in a legitimate way with your immigration paperwork and your driver's license, you would have at least one of these things.

As the government concedes, it knew that "someone named Valois Nunez-Artiles had sold false orders of supervision and, at least once, had claimed to be a lawyer." To suggest to the jury that no such person existed was misleading.

Nonetheless, the above statements do not justify a new trial. This Court has identified the following factors as relevant to the prosecutorial misconduct inquiry: (1) whether the statements were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the district court's

jury instructions; (4) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; and (5) the strength of the competent proof to establish the guilt of the accused. *See Spencer v. Sec'y, Dept. of Corr.*, 609 F.3d 1170, 1182 (11th Cir. 2010); *Davis v. Zant*, 36 F.3d 1538, 1546 (11th Cir. 1994)). The government's comments in closing argument must also be "viewed in the context of the record as a whole." *Bailey*, 123 F.3d at 1400 (quoting *United States v. Harmas*, 974 F.2d 1262, 1269 (11th Cir. 1992)).

As the district court found, "some of the Government's statements, during closing argument, were certainly inartful and, read in isolation, could indeed be characterized as misleading." "Taken together, however," the district court continued, "the statements were not calculated to deceive the jury and were not ultimately prejudicial to . . . Maradiaga. There was overwhelming evidence otherwise presented of . . . Maradiaga's untruthfulness and guilt." In light of the relevant factors, we agree with the district court that the government's statements, while some may be characterized as misleading, as a whole did not rise to the level of prosecutorial misconduct.

First, the government's suggestion that "Val" did not exist, although not isolated, appears to have been the unintentional result of the government comparing the evidence regarding Karen Duarte's professional credentials with the complete lack of evidence regarding "Val's" credentials. The government's point here, in the

16

context of the entire trial, was that whoever was helping Maradiaga was not an actual lawyer or immigration professional and it was therefore not reasonable for him to believe that the Order of Supervision was legitimate. Second, defense counsel never objected to the government's statements during closing argument. This "failure to object can sometimes serve to clarify an ambiguous record as to whether a particular argument was in fact misleading or prejudicial." *Davis*, 36 F.3d at 1551 n.20. Third, the district court instructed the jury that "[a]nything the lawyers say is not evidence and is not binding on you." Such an instruction helps to mitigate the risk that the jury may have been misled by the government's statements. *See Frank*, 599 F.3d at 1239 (finding that the government's alleged improper statements were mitigated, in part, by the district court's "general instructions that comments of counsel were not evidence").

Finally—and most importantly—Maradiaga cannot show prejudice. There is no reasonable probability that, but for the government's statements in closing that "Val" did not exist, the outcome of the trial would have been different. Even if the jury believed that "Val" existed and was an actual lawyer, there was overwhelming, competent evidence that Maradiaga knew the Order of Supervision was fraudulent. For example, the Order of Supervision stated that Maradiaga had been ordered removed from the United States in 1999. The evidence, however, established that Maradiaga knew that he had never been ordered removed, as he so stated in all of

17

his legitimate immigration documents filed with USCIS.[5] The Order of Supervision also contained several conditions of release, such as registering as a sex offender, enrolling in a substance abuse program, enrolling in a sexual deviancy counseling program, and reporting to a probation officer. The evidence established that Maradiaga never complied with any of these conditions, indicating that he knew they did not actually apply to him. Maradiaga also testified that he does not drink, use drugs, and has never been accused of "any type of sexual crime." The evidence at trial that Maradiaga knew that the Order of Supervision was fraudulent is overwhelming and, thus, he cannot show prejudice. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) ("[Defendant] cannot show prejudice in the face of the overwhelming evidence of his guilt."). Accordingly, we find that the government's statements in closing regarding "Val" do not justify a new trial.[6]

---

[5] At trial, Maradiaga denied filling out the forms, claiming that Duarte prepared them on his behalf. Yet, the evidence showed that when Duarte prepared the forms for Maradiaga, she filled out the "preparer" section and signed her name. At least thirteen of Maradiaga's other applications were signed only by Maradiaga and the "preparer" section was left blank. Likewise, all of his legitimate immigration documents contained his actual alien number, while the order of supervision contained someone else's alien number.

[6] Maradiaga urges the Court to follow *Davis*, where this Court vacated a murder conviction on the basis of prosecutorial misconduct. *Davis*, 36 F.3d at 1551. In *Davis*, there was clear prejudice to the defendant from the prosecutor's comments due to "[t]he uncertainty of the evidence." *Id.* In other words, it was a close call for the jury. As the Court explained, there was "a reasonable probability that the jury would have come to a different conclusion but for the aforementioned misconduct" because "the evidence against Davis was not strong enough to overbalance the prosecutorial misconduct in this case." *Id.* at 1550. The opposite is true here. Maradiaga admits that he used the Order of Supervision, and, as discussed above, there is overwhelming evidence that he knew it was a fraudulent document.

18

2. The Government's Statements Regarding Officer Diaz

Maradiaga also argues that the government improperly bolstered the testimony of Officer Diaz in closing "by vouching for [her] credibility." "Ordinarily, it is improper for a prosecutor to bolster a witness's testimony by vouching for that witness's credibility." *United States v. Sosa*, 777 F.3d 1279, 1295 (11th Cir. 2015) (quoting *United States v. Bernal–Benitez*, 594 F.3d 1303, 1313 (11th Cir. 2010)). A prosecutor's comments are considered improper vouching "if the jury could reasonably believe that the prosecutor was expressing a personal belief in the witness's credibility." *Id.* "A prosecutor's comments can fail this test two ways: (1) by placing the prestige of the government behind the witness, or (2) by indicating that information not before the jury supports the witness's credibility." *Id.* (quoting *Bernal–Benitez*, 594 F.3d at 1313–14). "The rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case." *Id.* (quoting *Bernal–Benitez*, 594 F.3d at 1314).

Specifically, Maradiaga challenges the following statement from the government referencing Officer Diaz: "*And I know* and Officer Diaz knows that this defendant knows he was never removed because time and again in his immigration paperwork he put that he had never been involved in immigration proceedings." (emphasis added). Maradiaga contends that this statement "was the equivalent of

19

placing the prestige of the [g]overnment behind Officer Diaz's testimony and vouching for Officer Diaz's truthfulness." We disagree.

While a prosecutor may not make personal assurances about a witness's veracity, such as by stating "I believe the witness is telling the truth," *see United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1994), a prosecutor is permitted to "comment[] on a witness's credibility," *Sosa*, 777 F.3d at 1295, and "indicate his opinion or knowledge of the case . . . if the [prosecutor] makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence." *United States v. Rivera*, 780 F.3d 1084, 1100 (11th Cir. 2015) (quoting *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984)). The latter is exactly what the government did here.

The government did not say that it believed Officer Diaz was telling the truth, the government simply commented on the facts in evidence and urged the jury to draw a certain conclusion. Immediately after stating "[a]nd I know and Officer Diaz knows that this defendant knows he was never removed," the government made clear it was referring directly to the evidence:

> There was a place where you could mark if you have been in removal proceedings, and not once in those 13 times did the defendant mark that. The defendant knew he hadn't been removed, not just because it's a noteworthy experience, but because he affirmatively filled out paperwork saying he had never been removed. Officer Diaz said the defendant was not removed in May of 1999. She reviewed the A file, and that A file showed without doubt that the defendant was not removed at the time indicated on the paperwork.

20

This is an accurate characterization of the evidence. Officer Diaz testified as follows:

> Q: Have you reviewed the defendant's A file to determine if he was ever ordered removed?
> A: Yes, I have.
> Q: Was he ever ordered removed?
> A: No.
> Q: And again, did the defendant himself state anywhere in his A file that he was never ordered removed?
> A: Yes, on all his TPS applications.
> Q: So multiple times?
> A: Yes.
> Q: He himself said he was never removed?
> A: Correct.

The government accurately relayed this evidence, and the conclusions to be drawn directly from that evidence, to the jury. We therefore find that the government did not "improperly bolster" Officer Diaz's testimony. *See Reeves*, 742 F.3d at 505 ("[A]lthough a prosecutor may not exceed the evidence presented at trial during her closing argument, she may state conclusions drawn from the trial evidence.").

## IV. CONCLUSION

For the reasons discussed above, we affirm the district court's denial of Maradiaga's motion for a new trial.

**AFFIRMED.**