**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10414

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

STEPHEN DANIEL LEONARD,

*Defendant- Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20383-JEM-1

_____

Before LUCK, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Stephen Daniel Leonard appeals his conviction for possession of a firearm as a convicted felon. After careful review, we reject each of Leonard's arguments and affirm his conviction.

Separately, Leonard's counsel filed a motion to withdraw. Because he has complied with our rules in his efforts to withdraw and has shown incompatibility between himself and Leonard to justify withdrawal, we grant Leonard's counsel's motion. *See* 11th Cir. R. 27-1(a)(8), 46-10(c). Counsel shall be appointed by separate order to review and assess any action to be taken in this decision. *See* Fed. R. App. P. 40.

## I.

Leonard sent a series of threatening emails to the Bay Harbor Islands Police Chief and a U.S. Attorney. The FBI investigated the matter and contacted Leonard for questioning. Leonard agreed to meet with law enforcement agents at a local Starbucks. When Leonard arrived at the Starbucks, he texted an agent, "I'm armed, so don't overreact." The law enforcement agents knew that Leonard was a convicted felon, so upon meeting him, they seized Leonard's firearm and placed him under arrest. He was charged with possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g).

At a pre-trial detention hearing, Leonard stated that he possessed the firearm because the week before the meeting, someone had tried to kill him. Specifically, he claimed he observed someone in a car making a movement that "looke[d] like he [was] loading a gun" and that another car subsequently followed him. Doc. 156 at 27–29. He stated that the reason he initially emailed the Bay Harbor Islands Police Chief and the U.S. Attorney was to determine who was trying to kill him. And he admitted that he possessed the gun

but claimed that he did so out of necessity because "nobody else is protecting him." *Id.* at 34.

At multiple pre-trial hearings, Leonard repeatedly insisted on representing himself. At his first pre-trial hearing, the magistrate judge informed him of his right to counsel, notified him that he was not required "to make any statements about the charges against" him, and that "[a]ny statements [he made] could be used against" him. Doc. 154 at 2–3. Leonard told the court that he wanted to represent himself. The court offered to appoint standby counsel, but he rejected the offer.

At the second pre-trial hearing, the magistrate judge asked more questions to ensure that Leonard's decision to represent himself was knowing and voluntary. Leonard responded that "[i]t's a *Faretta* inquiry" and said that he was familiar with the line of questioning. Doc. 156 at 2. He further stated that he had previously represented himself in a state criminal trial, he had a legal writing and analysis certificate from the University of Miami School of Law, he understood the "federal rules of procedure," and he had some familiarity with the Federal Rules of Evidence. *Id.* at 2–4. The magistrate judge determined that Leonard had knowingly and voluntarily chosen to represent himself but also appointed standby counsel, to which Leonard consented. The district judge later discharged the standby counsel upon Leonard's request.

At a third pre-trial hearing, the district judge stated that the prior hearings were adequate to determine that Leonard know-

ingly and voluntarily waived his right to counsel, but he nevertheless offered Leonard another chance to accept the assistance of counsel. Even "in light of the [potential] penalties" and "difficulties of representing" himself, Leonard confirmed that he wanted to proceed pro se, and he declined standby counsel. Doc. 147 at 6.

The government filed an omnibus motion in limine, requesting to exclude any evidence involving Leonard's reason for possessing the firearm at the Starbucks meetup. The government argued that Leonard could not meet the elements of the necessity defense because (1) there was no immediate emergency and (2) he admitted to possessing the firearm before he faced any imminent threat. The motion also asserted that the government was unaware of any evidence that Leonard had any mental health issues and that raising any such concerns at trial would improperly mislead the jury.

The district court determined that there was no reasonable basis for Leonard's necessity defense and granted the government's motion in limine. The district court warned Leonard that, if he brought up any of the events that were covered in the motion in limine at trial, then the court would instruct him to stop.

At trial, the government presented evidence that Leonard was armed at the Starbucks meetup, that Leonard was a convicted felon, and that the firearm had travelled in interstate commerce. Specifically, the government's witness testified that the firearm was made in Germany, imported into New Hampshire, and recovered

in Florida. He also testified that the firearm was loaded with ammunition that was manufactured in either Georgia or Missouri.

Leonard testified that he was a convicted felon and had a firearm at the Starbucks meetup. He also repeatedly testified about facts related to the necessity defense, to which the government objected pursuant to the motion in limine. The court sustained those objections. The jury found Leonard guilty. He was later sentenced to 18 months' imprisonment and 3 years' supervised release.

Leonard timely appealed. He also filed motions to appoint appellate counsel, which the court granted.

## II.

Leonard raises five issues on appeal. First, he argues that the district court violated his Sixth Amendment right to counsel by failing to sufficiently inquire about whether his choice to represent himself was knowing and voluntary. Second, he contends that the district court erred by barring him from presenting a necessity defense at trial. Third, he claims that the district court abused its discretion by admitting statements he made at his detention hearing into evidence. Fourth, he challenges the sufficiency of the evidence offered by the government to prove an interstate nexus for the firearm. And fifth, he argues that 18 U.S.C. § 922(g) is unconstitutional facially and as applied to him. For the following reasons, we reject each of Leonard's arguments.

*A.*

First, Leonard's argument that the district court violated his Sixth Amendment right to counsel fails because the district court sufficiently determined that Leonard's choice to represent himself was knowing and voluntary.

"[A] defendant's purported waiver of his right to counsel" is a mixed question of law and fact that we review *de novo*. *United States v. Hakim*, 30 F.4th 1310, 1318 (11th Cir. 2022). Under the Sixth Amendment, all criminal defendants are entitled to the assistance of counsel. U.S. Const. amend. VI. In *Faretta v. California*, the Supreme Court concluded that the Sixth Amendment also provides the accused with a right to self-representation. 422 U.S. 806, 819 (1975). Accordingly, those who have a right to counsel also have the right to waive counsel. *United States v. Stanley*, 739 F.3d 633, 649 (11th Cir. 2014). On appeal, it is the government's burden to show the validity of the waiver. *Id.* at 644.

We consider eight factors in determining whether the defendant's waiver was knowing and voluntary:

> (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which that counsel aided

the defendant; (7) mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of the trial.

*United States v. Owen*, 963 F.3d 1040, 1049 (11th Cir. 2020). A defendant's waiver may be valid when most of the factors point in favor of a finding that his waiver was valid. *See id.*

Here, we have no trouble concluding that the government has met its burden of demonstrating that most of the *Owen* factors weigh in favor of finding that Leonard's waiver was valid. First, Leonard's age, health, and educational background support a finding that his waiver was knowing and voluntary; he was 49 years old at trial, he had never received a mental health diagnosis, and he represented that he earned a certificate from the University of Miami School of Law in legal writing and analysis. Second, his prior contact with lawyers supports a knowing and voluntary waiver; he worked with court-appointed standby counsel before firing her because she advised him against relying on a necessity defense. Third, his understanding of legal rules supports a finding of a voluntary waiver; he stated that he was familiar with the Federal Rules of Procedure and Evidence. Fourth, his experience in criminal trials supports the district court's conclusion; he had previously represented himself pro se in a criminal trial, and he had a lengthy criminal history, indicating familiarity with the criminal justice system. And fifth, there was no mistreatment or coercion; Leonard voluntarily declined multiple offers to obtain court-appointed counsel.

Because most of the *Owen* factors indicate that he knowingly and voluntarily waived his right to counsel, we reject Leonard's Sixth Amendment claim.

*B.*

Second, we reject Leonard's claim that the district court erred by barring him from raising a necessity defense at trial.

We review *de novo* a "determination whether a defendant has set forth a sufficient proffer to permit the defense of necessity." *United States v. Dicks*, 338 F.3d 1256, 1257 (11th Cir. 2003). To invoke the defense, a defendant must demonstrate that

> (1) he was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) he did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative to violating the law; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*United States v. Moore*, 76 F.4th 1355, 1362–63 (11th Cir. 2023) (citation modified). A threat is not "imminent" when a significant period of time has lapsed since the defendant was in danger. *United States v. Bell*, 214 F.3d 1299, 1301–02 (11th Cir. 2000); *see also United States v. Flores*, 572 F.3d 1254, 1266 (11th Cir. 2009); *United States v. Rice*, 214 F.3d 1295, 1297–98 (11th Cir. 2000).

Here, Leonard fails to make the required showing of an "imminent" threat under *Moore*. Notably, Leonard never faced an imminent threat. His allegations of an imminent threat are too vague to establish danger, as he never even saw a gun—just hand motions that "looke[d] like [someone was] loading a gun." Doc. 156 at 27–29. But even if those hand motions do amount to a threat of harm, he cannot claim that the threat remained imminent the following week when he met with law enforcement officers. *See Bell*, 214 F.3d at 1301–02. Accordingly, we reject Leonard's claim that the district court erred in barring his necessity defense.

## C.

Third, Leonard's argument that the district court admitted impermissible evidence fails because the error was invited by Leonard.

"The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Maradiaga*, 987 F.3d 1315, 1322 (11th Cir. 2021) (citation modified). This doctrine "prevents litigants from sandbagging district courts by introducing error at trial with the intention of creating grounds for reversal on appeal." *United States v. Duldulao*, 87 F.4th 1239, 1255 (11th Cir. 2023) (citation modified). Accordingly, "[w]here a party invites error, [we are] precluded from reviewing that error on appeal." *Maradiaga*, 987 F.3d at 1322 (citation modified).

Here, Leonard complains that the district court should not have admitted a redacted transcript of his detention hearing at trial.

But when asked at a pre-trial hearing whether he had any objections to the government introducing the redacted transcript, Leonard stated that he had "no objections." Doc. 153 at 5. Accordingly, Leonard invited any error in the district court's decision to admit the evidence, and we are "precluded from reviewing that error on appeal." *Maradiaga*, 987 F.3d at 1322 (citation modified).

## D.

Fourth, Leonard's challenge to the sufficiency of the government's evidence to prove an interstate nexus for the firearm fails.

To prove an interstate nexus for a firearm, the government need demonstrate only that the firearm or ammunition was "manufactured outside the state where the offense took place." *United States v. Edwards*, 142 F.4th 1270, 1285 (11th Cir. 2025), *cert. denied*, No. 25-5998 (2025). The government did so here. At trial, the government's witness testified that the firearm was made in Germany, imported to New Hampshire, and recovered in Florida, and that the ammunition recovered was manufactured out of state. Because the government adequately demonstrated that the firearm and ammunition was "manufactured outside the state where the offense took place," we reject Leonard's sufficiency of the evidence challenge. *Edwards*, 142 F.4th at 1285.

## E.

Fifth, Leonard's challenge to the constitutionality of section 922(g)(1) fails under the prior precedent rule.

We generally review the constitutionality of a statute *de novo*. *United States v. Gruezo*, 66 F.4th 1284, 1292 (11th Cir. 2023). But when, as here, a party raises a constitutional challenge for the first time on appeal, our review is limited to plain error. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).

Leonard's challenge stems from the Supreme Court's decisions in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), which, he contends, render section 922(g)(1) unconstitutional. But we recently considered—and rejected—a constitutional challenge to section 922(g)(1) in light of *Bruen* and *Rahimi*. *United States v. Dubois*, 139 F.4th 887, 894 (11th Cir. 2025), *cert. denied*, No. 25-6281, 2026 WL 135685 (U.S. Jan. 20, 2026). Accordingly, in a straightforward application of our prior precedent rule, *United States v. Hanna*, 153 F.3d 1286, 1288 (11th Cir. 1998), we decline to reconsider our previous decision in *Dubois* here. Leonard's constitutional challenge to section 922(g)(1) fails.

## III.

For the foregoing reasons, we **AFFIRM** Leonard's conviction.

We **GRANT** Leonard's counsel's motion to withdraw as counsel. 11th Cir. R. 27-1(a)(8), 46-10(c). Counsel shall be appointed by separate order.