**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-13220

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SAMUEL LEE JONES,

a.k.a. Samuel Lee Tyson,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cr-60204-RNS-1

————————————————

Before WILLIAM PRYOR, Chief Judge, and ABUDU and ANDERSON,
Circuit Judges.

PER CURIAM:

Samuel Jones appeals his conviction for knowingly possessing a firearm and ammunition as a felon and his sentence as an armed career criminal. 18 U.S.C. §§ 922(g)(1), 924(e)(1). Jones challenges the use of surrogate DNA expert testimony, the sufficiency of the evidence, the constitutionality of section 922(g), jury instructions about the "different occasions" requirement under section 924(e), and the imposition of a sentence under section 924(e) based on predicate offenses other than those found by the jury. No reversible error occurred. We affirm.

## I. BACKGROUND

A grand jury indicted Jones for knowingly possessing a firearm and ammunition as a felon. 18 U.S.C. § 922(g)(1). The indictment alleged that he had three prior convictions for offenses committed on separate occasions. *Id.* § 924(e). Jones pleaded not guilty.

Before trial, the government filed a notice of intent to introduce expert testimony of Jerome Remm, a forensic DNA analyst. Remm had compared Jones's DNA profile with samples recovered from a gun found near Jones at the time of his arrest. The government amended its notice to substitute Daniel Aguilar, another DNA analyst, for Remm because of a scheduling conflict. The government reported that the substance of the testimony would remain unchanged and that Aguilar had served as the technical reviewer for Remm's report and concurred with Remm's findings. The government stated that Aguilar would testify to the comparison Remm conducted and explain the basis for his approval of

Remm's conclusions. Separately, the parties submitted joint proposed jury instructions and a special verdict form for the second phase of trial to determine Jones's eligibility for an enhancement under the Armed Career Criminal Act. These instructions tasked the jury with determining whether the government proved, beyond a reasonable doubt, that Jones had three or more prior felony convictions "committed on occasions different from one another."

At trial, the prosecution's case-in-chief focused on the events of January 16, 2023, during which Detective Danielle Lamparelli and Officer Sean Jaycox coordinated Jones's arrest outside of a trap house. Both officers testified that, upon making eye contact with police, Jones fled on foot. During the pursuit, the officers observed Jones reach for his waistband in a manner they described as an "appendix carry," a movement they identified as indicative of concealing a gun.

As detective Lamparelli rounded a corner in pursuit, she witnessed Jones collide with a table and fall backward. She testified that she saw an object fall from Jones's waistband during the collision. Both she and Jaycox testified to hearing a distinctive sound of metal hitting concrete, which they identified as the sound of a gun hitting the ground.

Following the pursuit, Lamparelli and Jaycox, assisted by six other officers, moved to restrain Jones. Following Jones's detention, officers recovered a gun and an "appendix carry" holster near his feet. Although neither Lamparelli nor Jaycox saw Jones hold the weapon, the prosecution introduced video footage depicting the

proximity of the gun to Jones. Officer Jaycox testified that after donning gloves to secure the weapon, he first assisted in lifting Jones to his feet. Jaycox maintained that when he grasped Jones's shirt with his left hand during this process, he did not make direct contact with Jones's skin. On cross-examination of both Lamparelli and Jaycox, the defense pointed out that neither witnessed Jones hold the gun and that the metallic sound could have originated from other objects or surroundings.

The parties stipulated that the gun and ammunition had traveled in interstate commerce and that the DNA samples provided for analysis originated from the gun and from Jones. The prosecution then called Aguilar who testified that he performed a "fine-toothed comb" review of Remm's analysis and concurred with the findings. He reported that DNA mixtures found on the gun suggested a high probability of Jones's contribution: the mixture on the rear sight was 37 million times more probable if it included Jones, and the mixture on the slide and trigger guard was 68 trillion times more probable. On cross-examination, Aguilar explained that Jones's DNA constituted 32 percent of the profile found on the gun sight and 58 percent of the profile found on the slide and trigger guard.

In his defense, Jones called Dr. Elizabeth Johnson, a forensic consultant, who testified that the quantity of DNA analyzed—approximately 50 cells on the gun sight—was low enough to be consistent with transfer DNA from Jaycox's gloves or physical contact

during the arrest. She also suggested that the DNA mixture on the slide and trigger guard contained "female contributors."

At the close of the prosecution's case and again at the close of all evidence, Jones moved for a judgment of acquittal. FED. R. CRIM. P. 29. Jones argued that the evidence was circumstantial and that the quantity of DNA was insufficient to prove possession. The district court denied both motions and found that, although the case was circumstantial, the government had established a prima facie case upon which a reasonable jury could find guilt beyond a reasonable doubt.

The jury found Jones guilty as charged. After the verdict, the district court proceeded to a second phase of trial to determine Jones's eligibility for an increased sentence under the Armed Career Criminal Act. In its opening statement, the prosecution told the jury that the parties would proceed by stipulation as to Jones's criminal history and that the stipulations would contain "different dates," and the prosecution asserted that "[a]ll you have to find is that there are three different dates in there for you to find that piece of it satisfied." As the prosecution stated, the jury was to find that "there are convictions, and that there are three separate occasions during which these crimes were committed." The prosecution presented stipulations for armed kidnapping and attempted armed robbery, committed on or about July 24, 1983, armed robbery, committed on or about July 24, 1983, delivery of cocaine, committed on August 16 and August 18, 2005, and conspiracy to possess

with intent to distribute cocaine, committed on May 5, 2007. Because the first two offenses occurred on the same date, the district court—with Jones's consent—instructed the jury that those two convictions "only count as one" for purposes of the "different occasions" inquiry. The jury found that Jones had three prior felony convictions committed on occasions different from one another.

Jones's presentence investigation report calculated a base offense level of 20, United States Sentencing Guidelines Manual § 2K2.1(a)(4)(A) (Nov. 2023), based on his commission of the instant offense after sustaining at least one prior felony conviction for a crime of violence or a controlled substance offense. Because Jones was convicted under section 922(g) and had at least three prior convictions for serious drug offenses, the report designated him as an armed career criminal, and his base offense level was enhanced to 33. *Id.* § 4B1.4(b)(3)(B). Because Jones qualified as an armed career criminal, his criminal history category was adjusted to IV. *Id.* § 4B1.4(c)(3). With an offense level of 33 and a criminal history category of IV, Jones's guideline range was 188 to 235 months of imprisonment. *Id.* ch. 5, pt. A. The statutory minimum was 180 months of imprisonment, and the statutory maximum was life imprisonment. *See* 18 U.S.C. § 924(e)(1).

At sentencing, the district court adopted the findings in the report without objection and applied the Armed Career Criminal Act enhancement. The district court relied on the three prior "serious drug offenses" in the report, even though only two of those

convictions had been presented to the jury. The district court sentenced Jones to a mandatory 180-month sentence of imprisonment, followed by three years of supervised release.

## II. STANDARDS OF REVIEW

Two standards govern our review. We review challenges to the sufficiency of the evidence supporting a conviction *de novo*. *United States v. Maradiaga*, 987 F.3d 1315, 1321 (11th Cir. 2021). In doing so, we view all evidence "in the light most favorable to the government," and draw "all reasonable inferences and credibility choices in favor of the jury's verdict." *Id.* (citation and internal quotation marks omitted). We review unpreserved challenges—concerning the prosecutor's statements, the constitutionality of section 922(g), the enhancement to the sentence under section 924(e), and the challenge under the Confrontation Clause, U.S. CONST. amend. VI—for plain error. *See id.*; *United States v. Edwards*, 142 F.4th 1270, 1279, 1285 n.9 (11th Cir.), *cert. denied*, 146 S. Ct. 903 (2025); *United States v. Brown*, 125 F.4th 1043, 1052 (11th Cir. 2025). To establish plain error, Jones must prove that there is "an error," that is "plain," that has "affect[ed] [his] substantial rights." *Maradiaga*, 987 F.3d at 1324 (citation and internal quotation marks omitted); *see also Edwards*, 142 F.4th at 1276; *Brown*, 125 F.4th at 1056. If these conditions are satisfied, we may exercise our discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Edwards*, 142 F.4th at 1276 (citation and internal quotation marks omitted); *see also Brown*, 125 F.4th at 1056; *Maradiaga*, 987 F.3d at 1324. An error is "plain" if it is "obvious" or resolved by "precedent from this Court

or the Supreme Court." *Brown*, 125 F.4th at 1056; *United States v. Cenephat*, 115 F.4th 1359, 1368 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 1340 (2025).

## III. DISCUSSION

We divide our discussion into five parts. First, we explain that no plain error occurred when the district court admitted surrogate DNA expert testimony. Second, we explain that sufficient evidence supports the jury's finding that Jones possessed a gun. Third, we explain that our precedent forecloses Jones's constitutional challenge to section 922(g). Fourth, we explain that no plain error occurred in instructing the jury how to determine whether Jones's stipulated offenses occurred on different occasions under section 924(e). Fifth, we explain that Jones's substantial rights were not affected when the district court relied on predicate offenses other than those found by the jury.

*A. The District Court Did Not Plainly Err by Admitting Surrogate DNA Expert Testimony.*

For the first time on appeal, Jones argues that the admission of Aguilar's testimony regarding the DNA analysis of the firearm violated his Sixth Amendment right under the Confrontation Clause. He contends that Aguilar impermissibly acted as a "surrogate expert witness" for the primary analyst, Remm, and that Aguilar's testimony at trial merely "parroted" Remm's analysis, procedures, and statistical findings. Relying on *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), and *Smith v. Arizona*, 602 U.S. 779 (2024), Jones asserts that the introduction of this forensic evidence prejudiced his

substantial rights by lending a "scientific air" to the prosecution's case yet denied him the opportunity to cross-examine the individual who performed the testing. We disagree.

The Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Although *Bullcoming* held that the testimony of an analyst who did not perform or observe a test is ordinarily insufficient, Justice Sotomayor's controlling concurring opinion explained that the Court did not decide whether a "supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test" could testify. 564 U.S. at 672 (Sotomayor, J., concurring). In addition, although *Smith* clarified that a surrogate cannot simply relay another analyst's substance under the guise of an "independent opinion," it did not eliminate the distinction for reviewers with direct involvement in the specific case. 602 U.S. at 798.

No plain error occurred. Even if we were to assume that the admission of Aguilar's testimony amounted to error, Jones cannot establish plain error. Unlike the surrogate in *Smith,* who had no prior connection to the case, Aguilar served as the technical reviewer for the DNA analysis, double-checked the results, and collaborated with Remm to reach a consensus. *Cf. Smith*, 602 U.S. at 798-99. Because neither *Bullcoming* nor *Smith* directly resolves whether the Confrontation Clause is violated when a supervising or reviewing expert with that involvement testifies to the contents

of a report, the admission of the testimony was not plain error. *See Cenephat*, 115 F.4th at 1368.

### B. Sufficient Evidence Supports the Jury's Finding that Jones Possessed a Gun.

Jones challenges the sufficiency of the evidence supporting his conviction. He contends that the prosecution failed to prove that he actually or constructively possessed the firearm found during his arrest. Jones asserts that there was no direct witness testimony or video evidence of him holding the weapon, that the DNA evidence was compromised by potential transfer, and that his proximity to the firearm in a dark, high-crime alleyway was insufficient to establish dominion or control. He maintains that his flight from the police was not evidence of his guilt and that the circumstantial evidence amounted to speculation that he possessed a gun. We disagree.

To sustain a conviction for knowing possession of a firearm, the government must prove either actual or constructive possession. *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). Actual possession is established by proving that the defendant had "physical possession of or personal dominion over the [firearm]." *United States v. Vereen*, 920 F.3d 1300, 1310 (11th Cir. 2019) (citations and internal quotation marks omitted). By contrast, constructive possession requires evidence that the defendant "exercised ownership, dominion, or control over the firearm or the [premises]" where it was concealed. *Id.* (citations and internal quotation marks omit-

ted). Although mere presence near a firearm is insufficient, the government may establish possession through either direct or circumstantial evidence, *Perez*, 661 F.3d at 576, and it need not "exclude every reasonable hypothesis of innocence" to satisfy the reach of a reasonable jury, *United States v. Graham*, 123 F.4th 1197, 1276 (11th Cir. 2024) (citation and internal quotation marks omitted).

Sufficient evidence supports Jones's conviction. Jones's arguments regarding the dark alleyway, the high-crime location, and the possibility of secondary DNA transfer on the gun challenge only "the weight of [the] evidence," which is "reserved for the trier of fact." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988). Because "a jury is free to choose among the reasonable constructions of the evidence," we will not disturb the verdict where a reasonable basis for the jury's choice exists. *United States v. Goodwin*, 765 F.3d 1306, 1320 (11th Cir. 2014).

A jury could reasonably have found that Jones possessed the firearm based on circumstantial and forensic evidence. Detective Lamparelli and Officer Jaycox testified that before fleeing, Jones reached for his waistband in a manner consistent with "appendix carry" concealment. During the pursuit, Lamparelli observed an object falling from Jones's waistband, and both Lamparelli and Jaycox heard a metallic sound consistent with a firearm hitting the pavement. The discovery of the gun at Jones's feet after Lamparelli observed an object falling from his waistband, coupled with DNA

evidence that established that it was 37 million times more probable that the DNA on the gun belonged to Jones, provided a reasonable basis for the jury to find that Jones possessed the gun.

## C. Our Precedent Forecloses Jones's Constitutional Challenge to Section 922(g).

For the first time on appeal, Jones argues that section 922(g) is unconstitutional under the Commerce Clause, on its face and as applied to his intrastate possession of a gun. But we have "repeatedly held that [section] 922(g) is facially constitutional under the Commerce Clause." *United States v. Edwards*, 142 F.4th 1270, 1285 (11th Cir.), *cert. denied*, 146 S. Ct. 903 (2025). And we have "also rejected as-applied challenges to [section] 922(g), holding that the government demonstrates the required minimal nexus to interstate commerce when it proves that the firearms were manufactured outside the state where the offense took place and, thus, necessarily traveled in interstate commerce." *Id.* (citation and internal quotation marks omitted). Jones does not dispute that the gun was manufactured outside the state where the offense took place. *See id.*

## D. No Plain Error Occurred in Instructing the Jury on How to Determine Whether Jones's Stipulated Offenses Occurred on Different Occasions Under Section 924(e).

For the first time on appeal, Jones argues that the prosecution and the district court committed plain error by effectively directing a verdict on the "different occasions" requirement under the Armed Career Criminal Act. Relying on *Erlinger v. United States*,

602 U.S. 821 (2024), and *Wooden v. United States*, 595 U.S. 360 (2022), Jones contends that the prosecution bypassed the requisite "multi-factored injury" by inviting the jury to count conviction dates in the parties' stipulation. We disagree.

Under the Armed Career Criminal Act, a defendant convicted under section 922(g) is subject to an enhanced sentence if he has three prior convictions for a violent felony or serious drug offense "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Because the "different occasions" inquiry increases the range of penalties, it "must be resolved by a unanimous jury beyond a reasonable doubt." *Erlinger*, 602 U.S. at 834. This inquiry is a "fact-laden," "multi-factored" analysis. *Erlinger*, 602 U.S. at 834; *Wooden*, 595 U.S. at 367-69. Although relevant factors include timing, proximity, and the relationship of the offenses, "a single factor—especially of time or place—can decisively differentiate occasions." *Wooden*, 595 U.S. at 369-70.

No plain error occurred. Jones points to the opening statement, where the prosecutor told the jury that "[a]ll you have to find is that there are three different dates" to satisfy the Act. Although this statement focused on timing, the record establishes that the inquiry was not "flattened" into a clerical exercise. To the contrary, because the stipulation recited that two of Jones's offenses occurred on the same date, the district court—with Jones's consent—expressly instructed the jury that those offenses "only count[ed] as one" for purposes of the different-occasions inquiry. Because the jury was tasked with finding that the offenses occurred

on separate occasions and *Wooden* acknowledges that timing can be a "decisive" factor, Jones has identified no precedent that establishes that the prosecution committed plain error. *See id.* at 369; *Cenephat*, 115 F.4th at 1368.

### E. The District Court's Reliance on Alternate Predicate Offenses Did Not Affect Jones's Substantial Rights.

For the first time on appeal, Jones argues that the district court performed a "blatant end-run" around *Erlinger* by relying on prior convictions other than those found by the jury. He contends that this error deprived him of his Sixth Amendment right to a jury determination on the "different occasions" inquiry under section 924(e) and improperly increased his guideline range. The "different occasions" inquiry must be resolved by a unanimous jury beyond a reasonable doubt. *Erlinger*, 602 U.S. at 834.

Although the district court erred by enhancing Jones's sentence based on the three drug offenses listed in the presentence investigation report instead of only the offenses found by the jury, s*ee id.*; *Edwards*, 142 F.4th at 1276, Jones has not established that the error affected his substantial rights. To meet this "heavy" burden, he needed to establish a "reasonable probability that he would have received a lighter sentence but for the error." *Edwards*, 142 F.4th at 1281-82 (citations and internal quotation marks omitted). The jury found beyond a reasonable doubt that the three prior convictions identified in the trial stipulation were committed on different occasions. Jones does not contest that those offenses qualify as predicates under the Act. Because Jones remained subject to the same

24-13220              Opinion of the Court                    15

enhancement and guideline range regardless of which qualifying predicates the district court cited, there is no reasonable probability of a different outcome. *See id.* at 1276, 1281-82.

## IV. CONCLUSION

We **AFFIRM** Jones's conviction and sentence.